# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PATRICIA ROSS,**

**Plaintiff,**

**-vs-**                                                    **Case No.  6:12-cv-1702-Orl-18DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for disability benefits.  For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** for additional proceedings.

# Procedural History

Plaintiff filed applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income on September 18, 2009, alleging disability since June 1, 2008 (R. 33, 141-142).  Her applications were denied initially and upon reconsideration, and Plaintiff requested and received an administrative hearing before an Administrative Law Judge ("the ALJ").  On June 6, 2011, the ALJ issued an unfavorable administrative decision (R. 30-48). The Appeals Council denied Plaintiff's request for review (R. 1-6), making the June 2011 decision the final decision of the Commissioner.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  This action for review timely followed and the matter was referred to the undersigned United States Magistrate Judge for issuance of a report and recommendation.

## Nature of Claimed Disability

Plaintiff alleged she became totally disabled on June 1, 2008, due to a stroke, bipolar disorder, depression, anxiety, back pain, and a heart murmur (R. 148-49). She claimed she suffered mood swings, panic attacks, chest pain, and had difficulty concentrating (R. 149).

*Summary of Evidence Before the ALJ*

Plaintiff was thirty five years old on the alleged onset date (R. 58), with a high school education and some college courses (R. 59) and past relevant work experience as a bank teller, a warehouse clerk, a personal banker, and a regional office manager/sales associate (R. 59-62, 150).

The voluminous medical evidence relating to the pertinent time period is detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections.  In addition to the medical records of the treating providers, the record includes Plaintiff's testimony, written forms and reports completed by Plaintiff, and opinions from the treating providers and from non-examining consultants.  By way of summary, the ALJ determined that Plaintiff had the following severe impairments:  depressive disorder; degenerative disc disease of the lumbar spine; migraine headaches; obesity; left shoulder labra1 tear; anxiety disorder; and panic attacks (R. 35) and the record supports this uncontested finding.  The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. 35-37), and has a residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[1] except, due to her mental impairments, she was limited to work with simple tasks and simple instructions." (R. 37).  The ALJ then determined that Plaintiff was not able to return to her past

---

[1]These regulations define sedentary work as follows:
(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 CFR 404.1567(a) and 416.967(a).

relevant work (R. 46-7), and, relying exclusively on the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was able to perform (R. 47).  The ALJ therefore concluded that Plaintiff was not under a disability (R. 47-8).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff asserts that the administrative decision was not made in accordance with proper legal standards and is not supported by substantial evidence.  Plaintiff contends:  1) the ALJ failed to follow

the treating physician rule;  2) the ALJ failed to properly evaluate Plaintiff's credibility; and  3) the ALJ erred in relying exclusively on the Medical-Vocational Guidelines.  The Court treats each objection in the context of the sequential evaluation used by the Commissioner.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*Evaluating Medical Opinions*

Plaintiff's first objection goes to the formulation of the RFC at steps two and three and whether the ALJ evaluated the medical opinions consistent with the applicable legal standard.  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79

-4-

(11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)   Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.   *See Lewis v. Callahan*, *supra; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).   If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.   20 C.F.R. § 404.1527(d)(2).   The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.   *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.   *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).   When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).   However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.   *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

As set forth in the administrative decision and the briefs, Plaintiff was evaluated and treated by numerous physicians, including frequent trips to the emergency room and inpatient admissions to

the hospital.  While Plaintiff was found to have some impairments that were objectively verifiable (her shoulder tear, degenerative disc disease), no underlying cause for many of her physical complaints (atypical headaches, atypical chest pain, abdominal pain) was found, despite numerous full workups.[2] In reviewing the medical opinions, the ALJ discredited the opinions of Plaintiff's treating neurologist, her family practitioner, and her psychiatrist, and credited the opinions of the non-examining state agency physician, the non-examining state agency psychologist, and the opinion of a single decision maker who is not a medical source.

*Dr. Benezette*

As summarized by the ALJ:

The claimant went to Coastal Neurology, Rehabilitation and Pain Management Center on April 27, 2009 for a New Patient Comprehensive visit with Dr. Sastry. (Exhibit 15F/23-24). She indicated that she had a motor vehicle accident two weeks prior and that this exacerbated her headaches and low back pain which she said she had for a long time. She said that her low back pain was secondary to a lumbar puncture/spinal tap she had a long time ago and since then she had residual low back pain.  She said she had a history of seizure disorder, bipolar disorder and migraines. She had no other complaints.  She was assessed with seizure disorder, bipolar history, low back pain, and a history of migraine headaches.  She was told to consult with Dr. Alyn Benezette, a neurologist, to evaluate and treat her for medical management of pain syndrome.

At her next exam on April 30, 2009, the claimant did not appear to be in any acute physical distress. Randall Dotts, PA-C, assessed the claimant with headaches, questionable etiology, back pain, questionable etiology, tremor, questionable etiology. He provided that these conditions could have adverse side effects to pharmaceutical interactions. In addition, he assessed her with history of seizure disorder, history of bipolar disorder, and polypharmaceuticals.

At a visit with Dr. Benezette on June 8, 2009, the claimant indicated she had chronic low back pain related to congenital abnormality of the lumbar spine and hips, as well as a history of hip dysplasia and extra lumbar vertebrae. . . . His impressions were recurrent headache most likely secondary to occipital neuralgia, cervical myofascitis/sprain/strain, rule out an underlying cervical disc disorder, thoracic myofascitis/sprain/strain, lumbar myofascitis/sprain/strain, rule out herniated nucleus

---

[2]Several physicians, however, opined that the physical complaints were likely somatization influenced by her bipolar disorder (*See, e.g.,* R. 886, R. 890). These opinions were never explicitly evaluated or weighed, as required by *Winschel.*  It appears from the ALJ's conclusion regarding Plaintiff's credibility, however, that the ALJ credited this view, finding: "In terms of the claimant's alleged physical impairments, it appears that most, if not all, of her physical symptoms were psychosomatic in nature." (R. 43).

pulposis/radiculopathy. With respect to reported changes seen on her recent brain MRI, he indicated he needed to rule out sterile demyelinating disorder versus cerebrovascular disease versus vasculitis. He indicated that she was going to have a brain MRI, a lumbar spine MRI, and begin physical therapy. He increased her Topomax for headache prophylaxis.

On June 25, 2009, the claimant returned to Coastal stating that she was instructed to come for pain medication. She said that they were going to take out her appendix but stopped at the last minute. PA Dotts noted that her MRI was denied. Due to her abdominal pain, questionable etiology, she was referred to GI for further evaluation. On August 31, 2009, she said she had an accident in a friend's pool and since then she had experienced numbness in her left foot with severe pain in the right sacroiliac region and had difficulty sitting, standing, and walking. Dr. Benezette's impression was sacroiliac regions sprain/strain. She was told to have myofascial trigger point injections to the right gluteus maximum muscle and to begin a short course of physical therapy. On September 10, 2009, she said that her muscles loosened up from the injections but still had lumbosacral discomfort, nonradiating, that affected her ability to stand or walk. She also said she had discomfort in the right ankle, lateral aspect, affecting her ability to stand or weight bear. The doctor again asked her to have an MRI of the lumbar spine, as well as an MRI of the right ankle.

On September 23, 2009, the claimant saw Dr. Benezette complaining of a severe headache. He admitted her to Florida Memorial Hospital for further evaluation and treatment of focal neurological deficits which will include an MRI of the brain. Her neurodiagnostic studies were unremarkable with the exception of the lumbar spine MRI on September 24, 2009. The MRI revealed a focal disc protrusion at L4-S of 3mm in AP dimension, 8 mm in width effacing the thecal sac causing some indentation. There were also moderate facet degenerative changes seen at that level. There was no evidence of TIA, CVA or seizure. She said that she was moving back to Las Vegas permanently on October 16, 2009. Dr. Benezette assessed her with lumbar disc herniation and status post basilar migraine. He encouraged her to continue with physical therapy, particularly to the lumbosacral spine, to increase endurance, strength, range of motion, function and mobility.

(R. 40-41, internal exhibit citations omitted).

Dr. Benezette completed a Multiple Impairment Questionnaire on September 27, 2009 (R. 718-725). He diagnosed Plaintiff with lumbar disc herniation, migraine headaches, and right ankle pain. Clinical findings included restricted range of motion in the lumbar spine, spasms of the paravertebral muscles, and tenderness of the right ankle. Dr. Benezette opined that Plaintiff was able to sit 3 hours total and stand/walk less than 1 hour total in an 8-hour workday (R. 720). The doctor reported that Plaintiff's symptoms were "constantly" severe enough to interfere with her attention

and concentration (R. 723) and she would require unscheduled breaks to rest every 1 to 2 hours during an 8-hour workday for 15 to 30 minutes each time. *Id.*.

The ALJ "rejected" Dr. Benezette's opinion, noting that the treatment history was "quite brief" in that the doctor "only saw the claimant over a six-month period from April 2009 to October 2009," and the doctor "did not have the benefit of reviewing the other medical reports contained in the current record" (R. 45). The Court finds this to be an improper application of the treating physician opinion analysis. As set forth above, deference is due to be given a treating provider, especially a specialist, unless there is good cause shown for doing otherwise. Here, the ALJ did not analyze whether the opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques, nor did he evaluate whether the opinion was consistent with the other substantial evidence in the record. While the length of treatment is a factor which may be considered in evaluating how much weight to give an opinion, the ALJ failed to explain why this factor was considered determinative as to this opinion, yet did not preclude crediting the opinions of consultants who *never* examined Plaintiff and had no treatment history. Remand is required for application of the appropriate standard.

*Dr. Son*

By contrast, the Court sees no error in the ALJ's weighing of the opinion of Dr. Son, the primary care physician. Dr. Son treated Plaintiff for approximately two years and diagnosed her with bipolar disorder, lumbago and headache (R. 792). Among other things, he opined that she could only sit for less than an hour in an eight hour day, and could only stand or walk for 0-1 hour (R. 794). The ALJ detailed Plaintiff's largely benign course of treatment with this provider (R. 37-45), and noted Plaintiff's numerous "erroneous or contradictory" reports of her medical history (R. 45). The ALJ determined that this lack of credibility affected the weight to be given to the opinion, noting:

> [M]ost, if not all, of the remaining responses by Dr. Son are simply not supported by the objective medical evidence. His opinion contrasts sharply with the other evidence of record and is without substantial support from the other evidence of record, which renders it less persuasive.
>
> I also note that the course of treatment pursued by Dr. Son has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. He apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what she claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of her subjective complaints. Despite the narrative dated March 14, 2011, which includes his statement that the limitations remain in effect through the present, I afford Dr. Son's opinion little weight.

(R. 45).

The ALJ applied the correct standard, and his determination that this opinion is not supported by the evidence and is inconsistent with other findings is, itself, supported by substantial record evidence.

*Dr. Bist*

Dr. Bist, a psychiatrist, began treating Plaintiff on January 12, 2011 (R. 1078). Dr. Bist diagnosed major depressive disorder, recurrent, severe (R. 1081). Treatment notes indicate that Plaintiff was depressed, but her speech was normal, affect was appropriate, perception was normal, intellectual functioning was normal, orientation was normal, insight and judgment were normal, memory was intact, and thought content and perception were normal (R. 1076, 1070, 1072, 1074). She was treated with medications.

Dr. Bist completed a Psychiatric/Psychological Impairment Questionnaire dated April 19, 2011 (R. 1062-1069). Dr. Bist found Plaintiff to be markedly limited (defined as effectively precluded) in her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; and her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance (R. 1065). She was also moderately limited (defined as significantly limited but not totally precluded) in her ability to remember locations

and work-like procedure; her ability to understand and remember detailed instructions; her ability to

work in coordination with or proximity to others without being distracted; her ability to complete a

normal workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods; her ability to interact

appropriately with the general public; and, her ability to get along with co-workers or peers without

distracting them or exhibiting behavioral extremes (R. 1065-1066).

> The ALJ rejected Dr. Bist's opinion, noting:

> When he completed the questionnaire, the doctor had only seen the claimant for four
> months, approximately one visit per month. (Exhibit 27F/l). He listed no laboratory
> or diagnostic test results supporting his diagnosis. (Exhibit 27F/2). His opinions
> contained in response to the questionnaire are contrary to his own treatment notes and
> contrary to the record as a whole. The opinion expressed is quite conclusory, providing
> very little explanation of the evidence relied on in forming that opinion. The
> possibility always exists that a doctor may express an opinion in an effort to assist a
> patient with whom he or she sympathizes for one reason or another. Another reality
> which should be mentioned is that patients can be quite insistent and demanding in
> seeking supportive notes or reports from their physicians, who might provide such a
> note in order to satisfy their patients' requests and avoid unnecessary doctor/patient
> tension. While it is difficult to confirm the presence of such motives, they are more
> likely in situations where the opinions in question depart substantially from the rest
> of the evidence of record, as in the current case. Therefore, I reject Dr. Bist's opinion
> in its entirety.

(R. 46).

> To the Court's knowledge, there are no laboratory tests which can confirm major depressive

disorder. While the length of treatment and the conclusory nature of the opinion, when compared with

the contrary treatment notes, are valid factors for the ALJ to consider, there is nothing to support the

ALJ's implicit finding that Plaintiff somehow wrangled this opinion out of her unwilling psychiatrist.

As it is not possible to tell how much the ALJ relied on inappropriate factors in rejecting this opinion,

remand for appropriate consideration is required.

In recommending that the case be remanded for additional consideration of the opinion evidence,[3] the Court does not imply that reconsideration will lead to a different ultimate result. Rather, the Court recognizes that its task is not to weigh the evidence in the first place, but to evaluate whether the decision is properly supported and was reached by application of the correct standards. As the instant evaluation of the opinion evidence does not comport with that standard, remand is necessary.   Although this point is dispositive, the Court proceeds with evaluation of the other objections raised by Plaintiff.

*Credibility*

When a claimant attempts to establish disability through subjective symptoms, the Eleventh Circuit follows a three-part test that requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptom] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptom]." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).   If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d);  *Mack v. Commissioner of Social Security,* 420 Fed.Appx. 881, 883 (11th Cir. 2011).   After considering a claimant's subjective complaints, the ALJ may reject them as not credible.  Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532

_____

[3]In addition to the above, the ALJ erred in crediting the opinion of John Share, a Single Decision Maker.  As conceded by the Commissioner (Doc. 15 at pp.16-17), this consultant was not an acceptable medical source.

(11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

Here, the ALJ detailed numerous reasons to support his finding that Plaintiff's allegations were not credible, including inconsistencies in her reports, failure to comply with treatment recommendations, non-compliance with medication, implausible assertions, a sporadic work history and daily activities that are markedly inconsistent with her allegations of disability (R. 43-45). Plaintiff points to other evidence, arguing that the fact that symptoms are somatic and the result of her mental impairments does not make them less severe.  As the Eleventh Circuit has noted, however: "The question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Commissioner of Soc. Sec.*, 421 Fed. Appx. 935, 939 (11th Cir. 2011).  Here, the Court finds the ALJ evaluation of  Plaintiff's credibility to be adequately articulated and  amply supported by the cited record evidence.

*The step five finding*

Plaintiff's final objection is that the ALJ erred in relying solely on the Medical Vocational Guidelines ("the Grids") and in not utilizing the services of a Vocational Expert ("VE") at step five of the evaluation.

The Eleventh Circuit recently summarized the applicable standard:

There are two avenues by which the ALJ may determine whether a claimant has the ability to adjust to other work in the national economy: (I) by applying the 20 C.F.R. Part 404 Medical–Vocational Guidelines (the "Grids"); and (ii) by the use of a VE, an expert on the kinds of jobs an individual can perform based on his capacity and impairments. *Phillips*, 357 F.3d at 1239–40.  Exclusive reliance on the Grids is inappropriate when the claimant is unable to perform a full range of work at a given RFC. *Id.* at 1242. If the ALJ concludes that the claimant cannot perform a full range or unlimited types of work at the claimant's RFC given his exertional limitations, then the ALJ must consult a VE to determine whether there are sufficient jobs at the claimant's RFC within the national economy that the claimant can perform. *Id.*

If the ALJ concludes that the claimant can perform a full range or unlimited types of work at the claimant's RFC despite any exertional limitations, the ALJ next must determine to what extent the claimant's nonexertional limitations affect his ability to secure employment at the claimant's RFC in the national economy. *Id.* at 1242–43. If nonexertional impairments exist, the ALJ may use the Grids as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through VE testimony, of the existence of jobs in the national economy that the claimant can perform. *Wilson*,[4] 284 F.3d at 1227; *Wolfe v. Chater*, 86 F.3d 1072, 1077–78 (11th Cir.1996); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992) ("An ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a [VE]."); *Allen*,[5] 880 F.2d at 1201 ("Even a mild mental impairment may prevent a claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies." (quotations and alteration omitted)).

*Owens v. Commissioner of Social Sec.*,  508 Fed.Appx. 881, 883-884 (11th Cir. 2013).

Applied here, the ALJ found Plaintiff capable of sedentary, unskilled work (R. 47), "except due to her mental impairments, she was limited to work with simple tasks and simple instructions." (R. 37).  Despite a finding that Plaintiff suffered from the severe impairments of depressive disorder, anxiety disorder, and panic attacks (as well as other non-exertional impairments such as pain from migraine headaches and degenerative disc disease) (R. 35) and a finding that Plaintiff had moderate limitations with respect to concentration, persistence or pace (R. 36),  the ALJ nonetheless concluded that: "The additional limitations had little or no effect on the occupational base of unskilled sedentary work. She did not lack the basic mental demands of competitive, remunerative, unskilled work which would severely limit the potential occupational base. (SSR 85-15)." (R. 47).   The Court finds this conclusion to be unsupported by substantial evidence.

As the Court noted in *Owens,* the ALJ's conclusion that Plaintiff's "limitations" have little or no effect on the occupational base of unskilled work "lacks sufficient clarity to allow a reviewing

---

[4]*Wilson v. Barnhart*,  284 F. 3d 1219 (11th Cir. 2012).

[5]*Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir.1989) ("Absent testimony from a vocational expert, the ALJ's conclusion that appellant's mental limitations do not significantly compromise her basic work skills or are not severe enough to preclude her from performing a wide range of light work is not supported by substantial evidence. ")

court to determine that the proper legal analysis was conducted." *Owens*, 508 Fed. Appx. at 884. Additionally, absent vocational testimony or other support, the ALJ's finding that Plaintiff's non-exertional limitations did not significantly limit her basic work skills is not supported by "independent evidence." *Id.*   No explanation is offered to support these findings, and there is no rationale offered to reconcile how impairments which are severe enough to be included in a step two analysis are nonetheless all but irrelevant at step five.

The Commissioner's analysis on this issue, which merely cites several cases for the proposition that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace … limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." (Doc. 15 at p. 23, *citing, inter alia, Winschel*, 631 F.3d at 1180-81) is unpersuasive.   The issue is not what to include in a hypothetical posited to a VE, it is whether or not the ALJ is obligated to use the services of a VE where non-exertional limitations are present.   In a case as here, where the impairments are primarily non-exertional, use of a VE is required.   *See Rogers v. Colvin*, NO. 7:12-CV-86 HL, 2013 WL 3756459, *5  (M.D. Ga. July 15, 2013) (bipolar disorder and PTSD impairment required use of a VE); *Watson-Perez v. Astrue*, No. 8:10–CV–2893–T–TGW,  2012 WL 112878,* 2 -4  (M.D. Fla. Jan. 12, 2012) (error to rely upon the Grids where claimant had, among other things, severe mental impairments of bipolar disorder and a major depressive disorder, and  moderate difficulties in the areas of social functioning and concentration, persistence, or pace); *Allen, supra.*[6]

---

[6]Additionally, the Court is not persuaded by the Commissioner's reliance on the opinion of a non-examining state agency psychologist, Dr. Mark Richman.  Although Dr. Richman did opine that Plaintiff had the "capacity to get along with others and to perform detailed tasks and to sustain attn/concentration for these tasks on meds" (R. 812), he also opined, as noted by the ALJ, that Plaintiff "should be in a low stress or no stress work situation." (R. 812, 36).  The ALJ noted this opinion, but did not explicitly give it weight.  The need for low or no stress is, itself, a nonexertional limitation but was not included in the RFC.  On remand, the ALJ must evaluate this opinion under the appropriate standards.

## Conclusion

The administrative decision was not made in accordance with legal standards and is not supported by substantial evidence.  It is therefore **respectfully recommended** that it be **REVERSED and REMANDED** to the Commissioner for additional proceedings consistent with this opinion.  If this recommendation is adopted, the Clerk should enter judgment accordingly and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 18, 2013.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

-15-